**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PITTSBURGH LOGISTICS SYSTEMS, INC., d/b/a PLS Logistics Services, | CIVIL DIVISION |
| | CASE NO.: 2:20-cv-817 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| vs. | |
| COX LOGISTICS LLC, COX LOGISTICS MANAGEMENT, LLC, and COX BROKERAGE, LLC, | |
| Defendants. | |

**PITTSBURGH LOGISTICS SYSTEMS, INC.'S
<u>VERIFIED COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF</u>**

Plaintiff, PITTSBURGH LOGISTICS SYSTEMS, INC., d/b/a PLS Logistics Services, (hereinafter "PLS"), by and through undersigned counsel, hereby submits its Complaint against Defendants COX LOGISTICS LLC, ("Cox Logistics"), COX LOGISTICS MANAGEMENT, LLC ("Cox Logistics Management") and COX BROKERAGE, LLC ("Cox Brokerage") (collectively, "Defendants") to recover damages for breach of contract, unjust enrichment, tortious interference with existing business relationships, and violations of the Pennsylvania Uniform Trade Secrets Act and Defend Trade Secrets Act. In support thereof, PLS respectfully states as follows:

## I. NATURE OF THE ACTION

This case arises out of Cox Logistics' breach of its obligations to PLS under a written contract, and Cox Logistics' misappropriation of PLS's trade secrets to usurp and interfere with PLS's legitimate business relations with JSW Steel (USA), Inc. ("JSW Steel"), a PLS customer. The contract between Cox Logistics and PLS prohibits Cox Logistics from back soliciting PLS's

customers. PLS is in the highly competitive field of third-party freight logistics providers. It is necessary for PLS to have a prohibition on back-solicitation of PLS customers to protect PLS's investment of time, money and corporate resources to grow and develop an exclusive customer base.

In January and February 2020, PLS's customer JSW Steel, who is not a party to this action, completed a large project that substantially increased the volume of outgoing shipments. Following this increase, PLS and JSW Steel had a dispute regarding the timely payment of PLS's invoices. While PLS was working with JSW Steel to bring JSW Steel's account current, Defendants reached an agreement with JSW Steel, in violation of Cox Logistics' obligations to PLS, whereby Defendants would provide logistics services to JSW Steel.

Defendants tortious interference with PLS's established business relations and written contract with JSW Steel is a threat to PLS's trade secrets and confidential information, which must be rectified by protecting PLS's trade secrets with a preliminary, and then permanent injunction against Defendants.

Cox Logistics should also be required to compensate PLS for its actual damages and lost profits, as well as disgorgement of any amounts by which Defendants were unjustly enriched by its unlawful acts.

## II. PARTIES

1.      Plaintiff PLS is a corporation formed under the laws of the Commonwealth of Pennsylvania with its principal place of business located in Cranberry Township, Pennsylvania.

2.      Defendant COX LOGISTICS LLC is a limited liability company formed under the laws of the state of Texas, with its corporate headquarters at 2294 FM 250, Lone Star, Texas 75668.

3.      Defendant COX LOGISTICS MANAGEMENT, LLC is a limited liability

company formed under the laws of the state of Texas, with its corporate headquarters at 2294 FM 250, Lone Star, Texas 75668.

4.      Defendant COX BROKERAGE, LLC is a limited liability company formed under the laws of the state of Texas, with its corporate headquarters at 2294 FM 250, Lone Star, Texas 75668.

## III. JURISDICTION AND VENUE

5.      This Court has original jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and PLS seeks, in addition to injunctive relief, damages which exceed $75,000, exclusive of costs, interest, and attorney's fees.

6.      Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) because it is where a substantial part of the events or omissions giving rise to the claims asserted herein occurred.

## IV. FACTUAL BACKGROUND

**A.  PLS is a third-party logistics company that brings shippers and carriers together for efficient freight transportation management.**

7.      PLS provides third-party logistics services to customers in a wide array of industries, including companies in metals, lumber, building products, automotive, nuclear, oil and gas, and industrial equipment. PLS coordinates the transportation of freight between its customers and carriers to obtain efficiencies and cost-savings for its customers.

8.      PLS's operations are based on a system of proprietary client and carrier databases and logistics management systems that are designed to maximize efficiencies to better serve its customers and provide them with cost savings compared to in-house logistics management.

9.      PLS is what is known as a non-asset-based logistics company. It has no physical assets. In other words, it does not actually own the means of transportation, such as trucks, rail

cars, barges, *etc*., it serves as a middleman, or broker, between clients who need to transport their materials and trucking or other transport companies ("partner-carriers") willing and able to move loads of cargo according to the unique needs of each customer.

10.     PLS's relationships with its customers and understanding of their unique shipping needs, its proprietary network of effective and reliable partner-carriers, and the knowhow of its highly trained employees, are the critical components of its operations that create an attractive value proposition for customers like JSW Steel. Competition in the third-party logistics space is fierce. Like its competitors, PLS's primary assets are its confidential network of partner-carriers, its highly trained employees, and its industry-specific knowhow and expertise.

11.     PLS has established a well-regarded and strategic model to identify and select motor carriers to provide its customers with the best service at efficient prices. PLS invested heavily in compiling its proprietary list of partner-carriers, and PLS continually develops and maintains relationships with partner-carriers in order to build a successful operation that delivers value to PLS's customers.

12.     PLS's partner-carrier lists represent a material investment of time and money. PLS considers these lists highly confidential because they constitute a valuable proprietary asset. PLS takes measures to protect this information by, and among other things, including confidentiality provisions in its customer contracts and terms of service with its partner-carriers. PLS specifically bargains for such contract provisions to prevent misuse of its confidential and proprietary information. PLS further protects its confidential and proprietary information through confidentiality obligations in its employment contracts.

**B.  Cox Logistics is a PLS "partner-carrier".**

13.     Cox Logistics is an asset-based motor carrier registered for interstate transportation

with the U.S. Department of Transportation at Docket No. MC-694171. Cox Logistics operates its own trucks and employs its own drivers, and partners with brokers like PLS to provide freight transportation services.

14.     When a motor carrier accepts the responsibility of moving freight for a PLS customer, the motor carrier is sent an Award Confirmation that details the terms of the transaction and forms the basis of the agreement between PLS and its partner-carrier. In addition to specifying the amount that motor carrier will be paid, the Award Confirmation advises and informs the motor carrier in two separate areas of the terms and conditions of accepting the freight. For example:[1]

| From | whowell@plslogistics.com |
|---|---|
| Sent | 02/05/2020 10:22:09 AM |
| To | dispatch@coxlogisticsllc.COM |
| CC | award_confirmation@plslogistics.com |
| Subject | ███████████████████████ *** AWARD CONFIRMATION *** RATE AGREEMENT *** |

 *Please refer to PLS Pro Terms of Use for conditions of rate agreement and payment terms. Any failure to meet agreed to terms and conditions can result in Carrier Performance Issues. See below for award details. Contact whowell@plslogistics.com (724-709.2301) with any questions.*

| Awarded Carrier:  COX LOGISTICS LLC ( 6BEN ) | Carrier Contact:  TONY GAINES |
|---|---|
| Dedicated Program Name: | Dedicated Unit Number: |
| Dispatcher Comments upon award: | PLS Contact: whowell@plslogistics.com    724-709.2301 |

**********RATE INFORMATION**********

| Rate Type | Unit Cost | Unit Type | Quantity | Estimated Amount | Comments |
|---|---|---|---|---|---|
| Line Haul | ███ | FL | 1.000 | ███ | |
| FUEL SURCHARGE | ███ | MI | ███ | ███ | |
| Estimated Award Amount: | | | | ███ | Prepaid |

All freight charges are estimates at time of dispatch and subject to change until true weight is verified. Fuel is estimated and subject to change based on actual pick up date. Payment will be triggered upon receipt of paperwork. Please refer to PLS Pro Terms of Use for payment terms and conditions. Please update your load information in PLS PRO at all times.

15.     All motor carriers that accept freight from PLS agree to be bound by PLS's Terms

---

[1] PLS Pro Award Confirmation Example

of Use. PLS's Terms of Use are available on PLS's website, and every rate confirmation informs the motor carrier that they are bound by the Terms of Use.[2] A true and correct copy of the PLS Terms of Use are attached hereto as **Exhibit A**.

### C. Cox Logistics breaches its agreement with PLS by circumventing PLS to solicit business from JSW Steel.

16.    JSW Steel is a major producer of steel products servicing customers throughout the United States. One of JSW Steel's manufacturing plants is in Baytown, Texas.

17.    PLS has contracted with Cox Logistics under its status as an asset-based motor carrier to provide freight transportation services to PLS customers like JSW Steel. Like all of PLS's partner-carriers, when Cox Logistics accepts freight for transportation for a PLS customer, Cox Logistics agrees to be bound by PLS's Terms of Use.

18.    Between January 2019 and February 2020, Cox Logistics accepted 602 loads of freight from PLS that were moving to or from JSW Steel.[3] In fact, more than 87% of the loads that Cox Logistics accepted from PLS during that timeframe involved freight from PLS's customer JSW Steel.

19.    The PLS Terms of Use provide that "[t]hese terms of use describe the terms and conditions applicable to your use of this Site and shall apply to all transactions awarded through it." Exhibit A at p. 1. Carriers provide Transportation Service "for the prompt transportation of products on behalf of shippers (each a "Shipper" and collectively "Shippers") as arranged by or through [PLS] … and made part of these Terms, subject to the provisions herein …." Exhibit A at p. 2, ¶ 4.

20.    When Cox Logistics accepts a load from PLS, it specifically agrees that "[a]ll

---

[2] PLS Terms of Use, https://www.plspro.com/terms.pdf (last visited May 21, 2020).
[3] A true and correct copy of the load report, with certain confidential redactions, is attached hereto as **Exhibit B**.

shipment information on the Site is proprietary and confidential to [PLS]. CARRIER agrees not to use this Site to identify shippers of freight and back solicit or circumvent the services of [PLS]." Id. at 4, ¶ 11.

21.     PLS is aware of at least one specific instance of Cox Logistics' circumvention of PLS to solicit from JSW Steel a substantial shipping job delivering tens of thousands of feet of 30" steel pipe to Kinder Morgan from April 8 through May 8, 2020.[4]

22.     The enforcement of contractual obligations prohibiting a motor carrier from back soliciting PLS customers is essential to the success and sustainability of PLS's business. PLS's customers represent years of investment of time and resources. When a partner-carrier seeks to circumvent PLS, the business model fails, and the partner-carrier's unlawful actions are akin to theft of years of PLS's investment.

23.     Cox Logistics cannot be excused from knowing and understanding the importance of protecting an investment in customers. In addition to being an asset-based motor carrier, Cox Logistics also provides logistics services. To do so, "Cox Logistics, LLC relies on dependable carriers of all sizes to meet our customers' needs. We are always looking for reliable carriers to help us fulfill our commitments."[5]

24.     In Cox Logistics' own "Carrier Set-up Packet", they too provide a prohibition on solicitation of customers. A true and correct copy of Cox Logistics' Carrier Set-up Packet is attached hereto as **Exhibit D**.

25.     Cox Logistics is well aware of the dangers of solicitation in the industry and cannot be excused from knowing the severity and extent of damages that flow as a direct and proximate consequence of a carrier soliciting a broker's customers.

---

[4] A true and correct copy of the infringing correspondence is attached hereto as **Exhibit C**.
[5] Cox Logistics Potential Carriers, https://coxlogisticsllc.com/potential-carriers (last visited May 20, 2020).

**D. PLS has an exclusive agreement with JSW Steel.**

26.     JSW Steel is a major producer of steel products. According to JSW Steel's website, JSW Steel is part of the JSW Group, a "$14 billion conglomerate with a presence across India, the United States, South America & Africa."[6] Among other steel industry metrics, JSW Steel touts its "unmatched nominal annual capacity of up to 500,000 net tons [of DSAW steel pipe]," and proclaims it is "the only large diameter pipe mill in North America supplied by its own steel source."

27.     A contract with JSW Steel can only result from a significant investment of time, resources, and the application of industry-specific expertise, but the payoff is a tremendous economic benefit for the right vendor. PLS is one such vendor that made the commitment to JSW Steel.

28.     On or about May 14, 2015, PLS entered into a Services Agreement with JSW Steel ("the JSW Steel Agreement"). The JSW Steel Agreement's Initial Term was for a period of three (3) years, continuing through May 15, 2018. Absent 90 days' written notice stating otherwise, on May 15, 2018, the contract's term automatically renewed for an additional 3-year period ending May 15, 2021.

29.     After years of successfully providing logistics service to JSW Steel, PLS was also granted an exclusive logistics services contract for the JSW Steel USA Ohio, Inc. ("JSW Steel Ohio") facility.

30.     On or about November 15, 2018, PLS entered into a separate Services Agreement with JSW Steel Ohio ("the JSW Steel Ohio Agreement") that called for an initial 3-year term ending November 15, 2021. In sum and substance, the terms of the JSW Steel Ohio Agreement

---

[6] JSW Steel, Baytown, http://www.jswsteel.us/baytown/default.htm (last visited Apr. 8, 2020).

are nearly identical to those in the JSW Steel USA Agreement.

31.     True and correct copies of the JSW Steel Agreement and JSW Steel Ohio Agreement are attached hereto as **Exhibit E**.

32.     Importantly, both Agreements provide, *inter alia*, that PLS will be the exclusive provider of logistics services to JSW Steel and JSW Steel Ohio, and that JSW Steel and JSW Steel Ohio will compensate PLS for its provision of those services. Exhibit E at pp. 1, 20.

33.     Following a dispute between PLS and JSW Steel regarding late payments on certain overdue invoices, on or about April 6, 2020, PLS sent its Partner-Carriers a notice advising that effective April 7, 2020, PLS would act as an agent only with respect to the collection from JSW Steel and payment of charges to Carriers. This only meant that PLS was no longer guaranteeing payment to its Partner-Carriers for shipments moving to/from JSW Steel. PLS also reminded its Partner-Carriers that the PLS Terms of Use prohibit back-soliciting customers or circumventing the services of PLS. A true and correct copy of the notice is attached hereto as **Exhibit F**.

34.     A copy of this notice was sent to Cox Logistics on or about April 6, 2020. PLS also contacted Cox Logistics by telephone to advise Cox Logistics of the pending dispute between PLS and JSW Steel, also reminding Cox Logistics of their continuing obligations under the PLS Terms of Use.

**E. Defendants unlawfully interfere with PLS's Agreement with JSW Steel and JSW Steel Ohio, with the intention of harming PLS.**

35.     Both the JSW Steel and JSW Steel Ohio Agreement give PLS the exclusive right to handle JSW Steel's logistics. Upon information and belief, PLS alleges that Defendants have attempted, are attempting, and will continue to attempt to circumvent PLS's exclusive contract with JSW Steel by providing logistics services and/or motor carrier to directly to JSW Steel. PLS further alleges on information and belief that Cox Logistics Management and Cox Brokerage is

aware of and encouraging or actively assisting with Cox Logistics' improper conduct by nature of managers or other employees it shares with Cox Logistics.

36.     Cox Logistics' website says that the company "is aggressive and is constantly seeking opportunities for growth and future business, while maintaining their existing relationships."[7] Which is apparent, even when those opportunities are an intentional interference with PLS's legitimate business relationships and existing contracts.

37.     Upon learning of Cox Logistics' unlawful interference with PLS's contract with JSW Steel and the breach of PLS's Terms of Use, PLS directed its attorney Marc Katz to warn Cox Logistics of its harmful and unlawful conduct.

38.     On April 10, 2020, Marc Katz sent a Cease and Desist letter to Cox Logistics informing them that they were in breach of their agreement with PLS, and that their conduct in circumventing PLS to work directly with JSW Steel would cause PLS irreparable harm. A true and correct copy of this letter is attached hereto as **Exhibit G**.

39.     Despite notice of its infringement, Cox Logistics is continuing to breach its agreement with PLS and is unlawfully interfering with PLS's contract with JSW Steel.

40.     Upon information and belief, PLS further alleges that Cox Logistics is soliciting or will solicit other PLS partner-carriers to aid and abet its unlawful interference between PLS and JSW Steel. Such conduct is tantamount to misappropriation of PLS's confidential information, as the identity of PLS's network of partner-carriers is an important ingredient of PLS's "secret sauce" to providing its customers unparalleled efficiencies in logistics services.

---

[7] [CITE] https://coxlogisticsllc.com/ (last visited May 20, 2020).

# V. CAUSES OF ACTION

## COUNT I – BREACH OF CONTRACT
### PLS v. Cox Logistics

41.     PLS hereby incorporates all the preceding allegations as if they were fully set forth herein.

42.     PLS and Cox Logistics are parties to a valid, enforceable, written contract. The terms of the contract are set forth in the PLS Terms of Use, and attached hereto as Exhibit A. Under the contract between PLS and Cox Logistics, PLS is the Broker, Cox Logistics is the Carrier, and JSW Steel is a Shipper, as defined therein.

43.     As the Carrier, Cox Logistics has a duty uphold its obligations under the contract and to not back-solicit PLS's Shippers (customers), nor to circumvent PLS's services. Exhibit A, p. 4 at ¶ 11.

44.     Cox Logistics has breached the agreement by circumventing PLS and soliciting PLS's customer, JSW Steel.

45.     As a direct and proximate result of Cox Logistics' breach of the Terms of Use, PLS has suffered (and will continue to suffer) damages and has been forced to incur attorney fees and costs. All of which are a foreseeable consequence of Cox Logistics' breach of its duties under the Terms of Use.

46.     Under the Terms of Use, "CARRIER shall defend, indemnify, and hold harmless, [PLS] from and against any loss, liability, damages, claims fines, costs or expenses, including reasonable attorney fees, arising from or relating to … [a] breach or violation of any of the terms herein, including but not limited to: … ii. all losses, damages or expenses (including reasonable attorneys' fees and costs) incurred by [PLS] from any failure by CARRIER to comply with these terms …." Exhibit A at p. 6, ¶ 17.

47.     Cox Logistics' circumvention of PLS, in violation of the Terms of Use, has resulted in lost profits to PLS in the form of commissions from loads that JSW Steel would have used PLS to arrange transportation for under JSW Steel's exclusive agreement with PLS.

48.     As a result of Cox Logistics' breach of its duties under the contract, Cox Logistics has caused, and will continue to cause irreparable harm to PLS.

WHEREFORE, Pittsburgh Logistics Systems, Inc. respectfully requests that this Court enter judgment in favor of Pittsburgh Logistics Systems, Inc. and against Cox Logistics in an amount in excess of $75,000, plus its attorney fees, court costs, and any other equitable relief this Court deems necessary to enjoin and prevent the harms complained of herein.

### COUNT II – UNJUST ENRICHMENT
**PLS v. Cox Logistics, Cox Logistics Brokerage and Cox Logistics Management**

49.     PLS hereby incorporates all the preceding allegations as if they were fully set forth herein.

50.     The value of a relationship with JSW Steel cannot be understated, but it can be quantified by measure of the revenue that results from having a business relationship with JSW Steel.

51.     Defendant Cox Logistics' relationship with PLS's customer JSW Steel arose under PLS's exclusive contract with JSW Steel, pursuant to the Carrier Terms that govern Cox Logistics' relationship with PLS and its shipper customers.

52.     Defendant Cox Logistics' has received the benefit of PLS's contracting with Cox Logistics to carry freight for JSW Steel in the past and has now capitalized on that benefit by circumventing PLS's contract with JSW Steel.

53.     Cox Logistics, Cox Logistics Management and Cox Brokerage have unjustly enriched themselves at the expense of PLS.

54.     It would be inequitable for Defendants to retain these benefits without payment to PLS of value, representing PLS's individual investment of time, money and resources into establishing and maintaining a business relationship with JSW Steel, and disgorgement of any profits Cox Logistics unjustly received through its unlawful direct or indirect transactions with JSW Steel.

WHEREFORE, Pittsburgh Logistics Systems, Inc. respectfully requests that this Court enter judgment in favor of Pittsburgh Logistics Systems, Inc. and against Defendants in an amount in excess of $75,000, plus its attorney fees, court costs, and any other equitable relief this Court deems necessary to enjoin and prevent the harms complained of herein.

### COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### PLS v. Cox Logistics, Cox Logistics Brokerage and Cox Logistics Management

55.      PLS hereby incorporates all the preceding allegations as if they were fully set forth herein.

56.     On or about May 18, 2015, PLS entered into a valid and enforceable contract with its customer, JSW Steel. The term of the contract continues through May 18, 2021. Exhibit E at p. 1.

57.     Defendants intentionally and unlawfully solicited business from JSW Steel, inducing JSW Steel to breach its contract with PLS and, instead, enter into contract(s) with Defendants.

58.     The solicitation resulted in the repudiation and breach of PLS and JSW Steel's written business agreements.

59.     Defendants intentionally contacted and solicited JSW Steel, despite Cox Logistics' prohibition from doing so under the Terms of Use between PLS and Cox Logistics.

60.     Cox Brokerage and Cox Logistics Management, by virtue of the commonality of

owners and members with Cox Logistics, knew or should have known of PLS's existing business relations with JSW Steel.

61.     Through such improper conduct, Defendants sought to induce JSW Steel to discharge PLS and contract with Cox Logistics and/or Cox Brokerage as replacement.

62.     As a direct and proximate result of Defendants' unlawful interference, PLS has and will suffer substantial financial injury and harm.

63.     Defendants' conduct constitutes an intentional, improper, and non-privileged interference with PLS's business and contractual relations with JSW Steel.

WHEREFORE, Pittsburgh Logistics Systems, Inc. respectfully requests that this Court enter judgment in favor of Pittsburgh Logistics Systems, Inc. and against Defendants in an amount in excess of $75,000, plus its attorney fees, court costs, and any other equitable relief this Court deems necessary to enjoin and prevent the harms complained of herein.

### COUNT IV – MISAPPROPRIATION OF TRADE SECRETS UNDER PENNSYLVANIA'S UNIFORM TRADE SECRETS ACT AND DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836)
### PLS v. Cox Logistics, Cox Logistics Brokerage and Cox Logistics Management

64.     PLS hereby incorporates all the preceding allegations as if they were fully set forth herein.

65.     Under the Pennsylvania Uniform Trade Secrets Act § 5303, PLS seeks to enjoin the actual or threatened misappropriation of PLS's trade secrets by Cox Logistics.

66.     By virtue of PLS's relationship with its customer JSW Steel, JSW Steel has actual or constructive possession of competitive, protectable and confidential information that has significant value to PLS, and to any other third-party logistics broker. Cox Logistics, in addition to being an asset-based motor carrier, operates the freight brokerage company Cox Brokerage. Cox Brokerage is directly competitive with PLS.

67.     Because Cox Logistics and/or Cox Brokerage is providing services directly to PLS's customer JSW Steel, Cox Logistics has or will have direct access to PLS's confidential information and trade secrets, including, but not limited to: i) the identity of PLS's Partner-Carriers, particularly those who have moved freight for JSW Steel; ii) the regionality of PLS's Partner-Carriers, *i.e.* which carriers reliably move particular traffic lanes; iii) the frequency and how often particular Partner-Carriers are available or physically present in a given region and the frequency of shipments to certain geographic regions; iv) the cost, revenue and profitability of certain traffic lanes; and v) the identity of JSW employees who are responsible for awarding shipping contracts.

68.     Pennsylvania Uniform Trade Secrets Act's definition of a trade secret includes customer lists. 12 Pa.C.S. § 5302. PLS's Partner-Carrier list is functionally equivalent to a customer list. PLS derives independent economic value from PLS's Partner-Carriers not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. PLS takes significant steps to protect its Partner-Carrier lists by including confidentiality provisions in its contracts with Partner-Carriers, customers, and employees, and by protecting the information in password-protected databases.

69.     Similarly, the regional operations of PLS's Partner-Carriers is a trade secret that needs to be protected from misappropriation. While the identity of PLS's Partner-Carriers is confidential, so too is the knowledge of the regions in which those Partner-Carriers operate. This knowledge means the difference between needing to call many different motor carriers, versus only a few, based on PLS's confidential knowledge of its Partner-Carriers regional operations and equipment availability.

70.     In addition to the regional operations of PLS's Partner-Carriers, PLS has developed

and maintains data regarding its Partner-Carriers' frequency with which they operate in certain geographic regions. This data is a valuable trade secret because it is the product of PLS's business efforts in compiling the data and turning it into useable information that informs lane pricing and predicting carrier availability. The frequency and destinations of JSW Steel's shipments is also valuable information that Defendants have or will have access to by virtue of Defendants' infringing agreements with JSW Steel.

71.     The cost, revenue and profitability of PLS's shipments is a protectable trade secret. See Air Products & Chemicals, Inc. v. Johnson, 442 A.2d 1114, 1121 (Pa. Super. Ct. 1982) (business plans and financial projections are trade secrets). The price that PLS charges for moving a particular load of freight, and the amount that PLS pays the motor carrier, is information that JSW Steel would have access to. Because Cox Logistics and/or Cox Brokerage is arranging or completing freight transportation for JSW Steel, Cox Logistics and/or Cox Brokerage will necessarily learn the prices charged and revenues received by PLS for moving freight for JSW Steel. This information is confidential and a protectable trade secret. Cox Logistics and/or Cox Brokerage's means of obtaining this information is because of their wrongful and tortious interference with PLS's business relations with JSW Steel, and/or Cox Logistics' breach of its contract with PLS.

72.     The identity of decision-makers at JSW Steel, particularly those who are responsible for awarding shipping contracts, is a protectable trade secret that is part of PLS's well-developed and highly confidential customer profiles and customer lists. These individuals are responsible for awarding shipping contracts and can be responsible for recommending brokers or carriers to JSW Steel's customers. These contacts present a valuable asset to PLS and are not generally known the public.

73. Cox Logistics and/or Cox Brokerage would have reason to know that any and all of PLS's trade secrets they have or will acquire will be procured only by improper means.

74. Each trade secret is confidential to PLS, and PLS derives significant economic value from each trade secret. Upon information and belief, PLS alleges that Cox Logistics is sharing, has shared, or is offering to share PLS's confidential information with Cox Brokerage.

75. PLS's confidential and trade secret information relate to products and services sold, shipped, and ordered in, or intended to be used, sold, shipped, and/or ordered in interstate and foreign commerce. Cox Logistics and/or Cox Brokerage misappropriated those trade secrets without PLS's authorization in violation of the Pennsylvania Uniform Trade Secrets Act and the Defend Trade Secrets Act.

76. Information like client lists and profiles, pricing information, and shipping-to information can be a trade secret. See Bohler Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79 (3d Cir. 2001); Robinson Elec. Supervisory Co. v. Johnson, 397 Pa. 268, 154 a.2d 494, 496 (Pa. 1959) ("Customer lists and information … [are] highly confidential and constitute a valuable asset. Such data has been held to be property in the nature of a 'trade secret' for which an employer is entitled to protection, independent of a non-disclosure contract.").

77. Injunctive relief is necessary to protect PLS's trade secrets and to prevent further actual or threatened misappropriation. Such an injunction would not inhibit Cox Logistics from using its general knowledge, skill or experience to conduct business in a lawful manner that does not infringe on PLS's legitimate business interests.

78. As a result of Cox Logistics' actual and threatened misappropriation, PLS has suffered and continues to suffer the disruption of its business relationship with JSW Steel, dilution of good will, misappropriation of PLS's trade secrets and confidential and proprietary business

information, and devaluation of its trade secrets and business.

79.     Cox Logistics' misappropriation of PLS's confidential information and trade secrets has caused PLS irreparable harm and, unless enjoined, will continue to cause irreparable harm to PLS's business including but not limited to loss of good will, reputation, competitive advantage, revenue and profits that are impossible to accurately and fully calculate, for all of which PLS has no adequate remedy at law.

80.     Because PLS's remedy at law is inadequate, PLS is entitled to preliminary and permanent injunctive relief barring Cox Logistics from violating the terms of its contract with PLS by misappropriating, disseminating, and retaining PLS's confidential information and trade secrets, as well as a preliminary and permanent injunction ordering Cox Logistics return all such information to PLS and not retain any copies thereof, whether in electronic format or otherwise.

81.     In addition to injunctive relief, PLS seeks actual damages caused by Cox Logistics' misappropriation and unjust enrichment resulting from such misappropriation. At this time, PLS's injury is difficult or impossible to fully calculate. The amount of lost profits is unascertainable at this time as is the extent of Cox Logistics' misuse of PLS's trade secrets.

82.     Due to Cox Logistics' intentional, knowing, willful, malicious, fraudulent and oppressive misappropriation of PLS's trade secrets and confidential information, PLS is also entitled to exemplary damages and reasonable attorneys' fees under the Defend Trade Secrets Act.

83.     PLS further seeks exemplary damages for Cox Logistics' willful and malicious misappropriation pursuant to Pennsylvania Uniform Trade Secrets Act § 5304(b), and it also seeks to recover attorneys' fees pursuant to Pennsylvania Uniform Trade Secrets Act § 5305 and the Defend Trade Secrets Act.

WHEREFORE, Pittsburgh Logistics Systems, Inc. respectfully requests that this Court

enter judgment in favor of Pittsburgh Logistics Systems, Inc. and against Defendants in an amount in excess of $75,000, plus its attorney fees, court costs, and any other equitable relief this Court deems necessary to enjoin and prevent the harms complained of herein.

### COUNT V – PRELIMINARY AND PERMANENT INJUNCTION
### PLS v. Cox Logistics, Cox Logistics Brokerage and Cox Logistics Management

84.     PLS hereby incorporates all the preceding allegations as if they were fully set forth herein.

85.     PLS requests that the Court issue a preliminary injunction against Cox Logistics to prevent immediate, imminent and irreparable harm to PLS. PLS further requests that upon final hearing, the Court award a permanent injunction against Cox Logistics, including as a result of Cox Logistics' actual and/or threatened misappropriation of its trade secrets. Pennsylvania Uniform Trade Secrets Act §§ 3503 et seq.

86.     As described herein, Cox Logistics has wrongfully retained, used and/or disclosed PLS's confidential information, solicited PLS's customer JSW Steel, contacted and/or solicited PLS's partner-carriers, and tortiously interfered with PLS's existing contracts. Cox Logistics is in possession of PLS's trade secrets and is soliciting business in a manner that wrongfully circumvents PLS's exclusive rights to deal with JSW Steel.

87.     The tortious interference with contractual relations may cause irreparable injury. Adler, Barish, Daniels, Levin, Creskoff v. Epstein, 482 Pa. 416, 393 A.2d 1175 (1978), cert. denied, 442 U.S. 907, 99 S.Ct. 2817, 61 L. Ed. 2d 272 (1979).

88.     PLS alleges that Cox Logistics has contacted and believes and therefore avers that Cox Logistics will continue to contact PLS's network of partner-carriers.

89.     As Cox Logistics has already demonstrated that it has misappropriated PLS's trade secrets, if left unchecked, Cox Logistics' unlawful conduct will continue to the detriment of PLS.

PLS will suffer imminent and irreparable harm in the form of loss of goodwill, business relationships, customers, and carriers.

90.     "The owner of a trade secret, unlike the owner of a patent, does not have a monopoly over the process or formula. He is only protected from other persons gaining access to it either by stealing it directly from him, or having another to whom it was lawfully disclosed do so. Others in the business are free to compile the same information so long as they obtain their knowledge through their own independent efforts and not merely by "borrowing" the information from their competitor." Appleby Sys. v. Caradon Thermal-Gard, 1995 U.S. Dist. LEXIS 21709 (M.D. Pa. 1995).

91.     As a business that is similarly engaged in offering transportation logistics and brokerage services, Defendants are acutely aware of the risk of harm that accompanies the misappropriation of PLS's trade secrets and tortious interference with PLS's business relationships. To wit, in Defendant Cox Brokerage's own brokerage contracts with motor carriers it restricts solicitation of its customers. Exhibit D at 7-8, ¶ 10

92.     As a result of Defendants wrongful conduct, it has gained and will continue to gain an unfair advantage by putting themselves in a position to divert significant business away from PLS.

93.     Under Pennsylvania law, a petitioner for preliminary injunction must establish: (1) the movant has shown a reasonable probability of success on the merits; (2) the movant will be irreparably injured by denial of relief; (3) granting preliminary relief will not result in even greater harm to the other party; and (4) granting preliminary relief will be in the public interest. Ecri v. McGraw-Hill, Inc., 809 F.2d 223 (3d Cir. 1987), citing, SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985). A preliminary injunction is clearly appropriate in this case.

94.     PLS has a reasonable probability of success on the merits of its case, as is evident through the evidence of record and attached as Exhibits to this verified complaint.

95.     There is no question that PLS has been and will continue to be irreparably injured by Cox Logistics' unlawful conduct and there is no adequate remedy at law for the damage to PLS's goodwill and industry reputation. If Cox Logistics is not enjoined from contacting PLS's network of partner-carriers, PLS's reputation will be irreparably damaged.

96.     If Cox Logistics calls on PLS's partner-carriers to accept freight from PLS's customer JSW Steel, there is a high probability of the risk of confusion of who the carriers are contracting with. PLS's reputation and business relationship with JSW Steel has been widely known and acknowledged throughout the industry, as evidenced by PLS's nearly 6-year exclusive relationship with JSW Steel. If Cox Logistics, a PLS partner-carrier, is tacitly permitted to "stand in PLS's shoes" with respect to JSW Steel, partner-carriers are likely to assume they are dealing with PLS when in fact that are dealing with a tortfeasor.

97.     There is no adequate remedy at law for quantifying the risk of confusion and damage to PLS's reputation that has, and will continue to ensue, if Cox Logistics is permitted to continue operating in this unlawful manner. (The resulting inability of plaintiff to control the quality of goods associated with its name will also constitute irreparable harm. See Franklin Mint, Inc. v. Franklin Mint, Ltd., 331 F. Supp. 827 (E.D. Pa. 1971)).

98.     Accordingly, PLS has passed the threshold test of satisfying the first two elements of its request for a preliminary injunction. See Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d. Cir. 2017).

99.     Granting PLS its requested preliminary relief will not result in even greater harm to Cox Logistics. Cox Logistics will still be able to operate its core business functions as an asset-

based motor carrier, and Cox Logistics will still be able to offer logistics services to its customers that are not an infringement on the protected business interests of PLS.

100.    Granting PLS a preliminary injunction against Cox Logistics is in the best interest of the public, and it is in the best interest of PLS's network of partner-carriers. An injunction will reduce the risk of confusion of who PLS's partner-carriers are dealing with, it will protect PLS's legitimate, protectable, business interests, and protect PLS's trade secrets from misappropriation.

101.    If Cox Logistics is not enjoined from continuing its unlawful conduct, PLS will suffer imminent and irreparable harm to its legitimate business interests, as Cox Logistics will be able to gain an unfair advantage and PLS will lose valuable relationships with partner-carriers and possibly other shipper customers.

102.    PLS has spent years refining its selection of trusted partner-carriers, implementing processes specific to JSW Steel, and developing proprietary pricing information to allow PLS to enjoy a mutually-successful and profitable business relationship with JSW Steel.

103.    Beyond saving PLS from the irreparable injury to its reputation, granting an injunction will:

    a.   Reduce or eliminate the likelihood of confusion for PLS's network of partner-carriers on who they are dealing with;

    b.   Allow PLS to regain control of the quality of services associated with PLS's brand, image and goodwill;

    c.   Prevent continuing interference with JSW Steel's contract's exclusivity provisions;

    d.   Prevent Defendants from inducing or attempting to induce PLS's customers from breaching their agreements;

    e.   Prevent Defendants from inducing or attempting to induce PLS's partner-carriers to breach their agreements with PLS by circumventing PLS's services to move cargo for JSW Steel;

    f.   Stop, and ultimately prevent, the continued misappropriation of PLS's trade

secrets developed over time at JSW Steel, and further prevent the threat of Defendants using a third-party broker to circumvent PLS and thereby share PLS's trade secrets with them.

WHEREFORE Pittsburgh Logistics Systems, Inc. respectfully requests that this Court enter a preliminary and permanent ORDER enjoining Defendants from:

    a. Directly or indirectly, without PLS's consent, soliciting or attempting to contract with JSW Steel;

    b. Directly or indirectly, without PLS's consent, soliciting or attempting to contract directly with motor carriers that have utilized PLS's services to move freight with JSW Steel;

    c. Directly or indirectly using or disclosing PLS's confidential and/or proprietary information, including without limitation, trade secrets, the identity of PLS's partner-carriers, the prices charged or revenue received for specific carriages of freight for JSW Steel;

    d. Retaining any of PLS's confidential and/or proprietary information in Cox Logistics' possession or control, including all records, files, notes, logs, memos, plans, data, and other tangible records that Cox Logistics obtained during the course of its dealings with JSW Steel or PLS;

    e. Cooperating with or encouraging other parties to engage in conduct that, directly or indirectly, constitutes a tort or violation of the Terms of Use, or any JSW Steel or JSW Steel Ohio Agreement (including the exclusivity provisions thereof), or interferes with existing or prospective contracts between PLS and its partner-carriers.

In addition to such other and further relief, whether special or general, at law or in equity, to which Plaintiff is justly entitled.

## VI. JURY DEMAND

104.    PLS demands trial by jury for all issues allowed to be tried by jury.

Respectfully submitted,


Dated: June 3, 2020

*/s/ Christopher S. Manzi*_____
Christopher S. Manzi
*cmanzi@plslogistics.com*
Pa. ID No. 319316
PITTSBURGH LOGISTICS SYSTEMS, INC.
3120 Unionville Rd., Bldg. 110, Ste. 100
Cranberry Township, PA 16066
Tel: 724-814-8632
Fax: 724-814-5200

*Counsel for Plaintiff*

**VERIFICATION**

STATE OF PENNSYLVANIA          §
                              §
COUNTY OF BUTLER          §

Before me, the undersigned notary, on this day personally appeared Joe Bielawski, the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

"My name is Joe Bielawski. I am the Chief Operating Officer at Pittsburgh Logistics Systems, Inc., the Plaintiff in the case captioned *Pittsburgh Logistics Systems, Inc. v. Cox Logistics LLC, Cox Logistics Management, LLC and Cox Brokerage, LLC,* I am capable of making this verification. I have read the Verified Complaint and Application for Injunctive Relief. The facts stated in the preceding Verified Complaint are within my personal knowledge and/or are based on information that I obtained from persons with personal knowledge in my capacity as COO, and, based on that knowledge and information, are true and correct."

Sworn to and subscribed before me by Joe Bielawski on June 3, 2020.

Notary Public in and for
the State of Pennsylvania

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
SANDRA DANIELLE MORSE
Notary Public
BUTLER TWP, BUTLER COUNTY
My Commission Expires Feb 12, 2021